**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

UNITED STATES OF AMERICA,

              Plaintiff,    :    Case No. 3:11-cr-160
                                                  Also Case No. 3:14-cv-302

                                                  District Judge Thomas M. Rose
   -   vs   -                            Magistrate Judge Michael R. Merz

ERIC NEWSOME,

              Defendant.    :

## REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. § 2255 to modify or vacate the judgment in this criminal case. The Motion to Vacate (Doc. No. 76) is before the Court for initial review pursuant to Rule 4(b) of the Rules Governing § 2255 Cases which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States to file an answer, motion, or other response within a fixed time, or take other action the judge may order.

Although this case remains assigned to United States District Judge Thomas M. Rose for final decision, it has been referred to the undersigned United States Magistrate Judge for initial

consideration as provided in the General Order of Assignment and Reference for the Dayton location of Court.

**Procedural History**

The grand jury for this District indicted Newsome on eight counts of violating federal drug laws (Doc. No. 6). Newsome pled not guilty, but after pretrial motion practice, entered into a Plea Agreement with the United States (Doc. No. 47). Most importantly, that Agreement was made under Fed. R. Crim. P. 11(c)(1)(C). *Id.* at PageID 155, ¶ 3. In pertinent part, that paragraph provides that "defendant and the USAO [U.S. Attorney's Office] agree that an appropriate disposition of this case is that the Court impose a sentence within the range of 60 to 188 months imprisonment; 4 years of supervised release; a fine as determined by the Court; and $100 in mandatory special assessments." *Id.*

Judge Rose conducted a plea colloquy with Newsome under Fed. R. Crim. P. 11 discussing the relevant terms of the Plea Agreement (Transcript, Doc. No. 67). During that colloquy, Newsome acknowledged under oath that he understood that the Agreement required him to plead guilty to Count 8 of the Indictment which alleges that he knowingly and intentionally distributed in excess of 28 grams of crack cocaine on August 24, 2010. *Id.* at PageID 259. Newsome indicated those were the facts he wanted to plead guilty to and that they were true. *Id.* at PageID 260. Mr. Mullins, defense counsel, indicated on the record that the stipulated maximum sentence was 188 months imprisonment, even though the statutory maximum would have been forty years (480 months). *Id.* at PageID 263. Judge Rose explained

at great length what factors he would consider in ultimately imposing sentence and the process he would follow to arrive at a sentence. *Id.* at PageID 264-68.

Mr. Mullins then discussed the Sentencing Guidelines. He stated his belief that the Probation Department would find the two predicate offenses necessary to classify Newsome as a career offender which "would result in a guideline range of 188 to 235 [months]." *Id.* at PageID 268-69. If Newsome was not found to be a career offender, the guideline range "could be as low as 30 to 37 months based on the weight and the Court's treatment of crack cocaine and powder cocaine on a one-to-one basis." *Id.* at PageID 269. Despite this range, the mandatory minimum would be 60 months because of the statutory provision for that. *Id.*

When discussing the sentencing range provided in the Plea Agreement of 60 to 188 months, Judge Rose indicated that Newsome and the Government agreed that a sentence in that range would "meet the goals of sentencing but not [be] more than necessary." *Id*. at PageID 271. Newsome indicated he understood that. *Id.* Having reviewed the Plea Agreement in detail and the rights he would be waiving by pleading guilty, Newsome pled guilty. *Id.* at PageID 279.

After receiving the Presentence Investigation Report, Judge Rose imposed sentence at a hearing on August 31, 2012. He found the relevant drug quantity to be 44 grams of crack (Transcript, Doc. No. 70, PageID 351). Judge Rose followed his usual sentencing policy of equating crack and powder cocaine. *Id.* at PageID 351-52. Judge Rose also eliminated any enhancement for Newsome's use of his residence for drug distribution. *Id.* at 352. However, he overruled the objection to the career offender enhancement, concluding that Newsome's *pro se* objections to the form of the state court judgments on the prior convictions were not well taken. *Id.* PageID 352-54. He ultimately concluded that the advisory sentencing guideline range was

188 to 235 months. *Id.* at PageID 356. This is precisely what defense counsel Mr. Mullins had predicted.

Having considered all the sentencing factors required, Judge Rose departed downward from the advisory sentencing guideline range to 124 months imprisonment, five years less than the guidelines recommended and also five years less than he could have imposed within the stipulated sentencing range.

Newsome appealed, claiming his sentence was "substantively unreasonable." Except for reducing the term of supervised release to the four years which was agreed upon in the Plea Agreement, the Sixth Circuit affirmed. *United States v. Newsome,* Case No. 12-4100 (6th Cir. 2013)(unreported; copy at Doc. No. 72).

## Analysis

### Standard for Ineffective Assistance of Counsel

Newsome raises claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

4

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, ___, 130 S.Ct. 2250, 2264 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d

5

372, 379 (6th Cir. 2011), *cert. denied,* \_\_\_ U.S. \_\_\_, 132 S.Ct. 1760 (2012), *quoting Harrington v. Richter*, 562 U.S. 86, \_\_\_, 131 S. Ct. 770, 792 (2011).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic,* 466 U.S. 648 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir.

2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986).

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Newsome claims he received ineffective assistance of trial counsel in that his trial counsel (1) "fail[ed] to investigate and present evidence that Movant was not a career offender"; and (2) "fail[ed] to effectively prepare for plea negotiations and present effective defense strategies at Movant['s] plea hearing." (Motion, Doc. No. 76, PageID 384.)

The gravamen of Newsome's claim is that his trial attorney, F. Arthur Mullins, did not communicate "how the operation and interaction of the career offender §4B1.1 federal sentencing provisions dramatically increased his sentencing exposure." *Id.* at PageID 386. Newsome believes he had a "great chance of [successfully] challenging the career offender enhancement." *Id.* at PageID 387. He contends Mullins' "determination that Newsome face[d] a career offender sentence rather than a regular guideline sentence was a 'gross mischaracterization.'" *Id.*

Newsome asserts, correctly, that Judge Rose counted as a predicate offense for the career offender enhancement Newsome's prior conviction for felonious assault (Transcript, Doc. No. 70, PageID 352-53). Newsome claims the felonious assault should not have been counted because it can be committed in a way "that does not require violence." (Motion, Doc. No. 76, PageID 388).

The prohibition portions of Ohio Revised Code § 2903.11 read:

> (A) No person shall knowingly do either of the following:
> (1) Cause serious physical harm to another or to another's unborn;
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
>
> (B) No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly do any of the following:
>
> (1) Engage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct;
> (2) Engage in sexual conduct with a person whom the offender knows or has reasonable cause to believe lacks the mental capacity to appreciate the significance of the knowledge that the offender has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome;
> (3) Engage in sexual conduct with a person under eighteen years of age who is not the spouse of the offender.

Newsome claims the Sixth Circuit has held that, while violations of Ohio Revised Code § 2303.11(A) qualify as violent offenses, violations of 2903.11(B) do "not readily qualify as a violent felony." (Motion, Doc. No. 76, PageID 388, citing *United States v. Anderson*, 695 F. 3d 390 (6th Cir. 2012)). Newsome claims the evidence presented does not show whether his felonious assault conviction was under 2903.11(A) or (B).

Examination of the Presentence Investigation Report belies Newsome's claim. As reported at ¶ 122 of the Report, the felonious assault conviction was for serious harm which is the requisite element under § 2903.11(A). Furthermore, the factual report that is part of that paragraph shows the conviction was for hitting another bar patron in the head with a baseball bat. While the indictment in that case does not appear to have been of record here, it is available on

the website of the Montgomery County Clerk of Courts and shows that Newsome was indicted under Ohio Revised Code § 2903.11(A)(1) for knowingly causing serious physical harm to Jay Wollenhaupt on July 7, 2007. Thus this is an appropriate predicate offense and Mr. Mullins did not provide ineffective assistance of trial counsel in advising Newsome that it was.

**Ground Two: Ineffective Assistance of Appellate Counsel**

Newsome next claims that his felonious assault and aggravated assault convictions should not have been counted toward classifying him as a career offender because he received only a probationary sentence for those convictions. He asserts he should have received only one criminal history point for each of these convictions under U.S.S.G. § 4A1.1(c)(Motion, Doc. No. 76, PageID 391). But that is exactly what he did receive. The Presentence Report assessed one point for the aggravated assault conviction in 2008 (See ¶ 121) and one point for the felonious assault conviction in 2008 (See ¶ 122).

Newsome argues that but for the deficient performance of his appellate counsel in not raising these errors, his case would have been remanded for re-sentencing without the career offender enhancement (Motion, Doc. No. 76, PageID 392). But since there was no error of the sort Newsome asserts, there was no deficient performance in failing to raise this asserted error on appeal.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Motion to Vacate be denied with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 12, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).